IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-CV-295-SMY-DGW |
| IYMAN FARIS, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

The United States of America (the "Government") brings this action seeking an Order revoking Defendant Iyman Faris' United States citizenship pursuant to 8 U.S.C. § 1451(a). Now pending before the Court is the Government's Motion for Judgment on the Pleadings (Doc. 24). Faris filed a Response (Doc. 28). For the following reasons, the Motion is **DENIED**.

## Background

Faris was born in Karachi, Pakistan. In March 1994, he entered the United States at New York, New York, using a passport and visa belonging to another person. Faris filed a Form I-589 Request for Asylum with the former Immigration and Naturalization Service ("INS") in July 1994. The I-589 form indicates that Faris arrived in the United States at Buffalo, New York in May 1994 after leaving his home country.

Faris married Geneva Bowling, a United States citizen, while his I-589 asylum request was pending with INS. In December 1995, Bowling filed a Form I-130 Petition for Alien Relative with INS, seeking to have Faris recognized as an immediate family member of a U.S. citizen. Contemporaneous with the I-130 filing, Faris filed a Form I-485 Application to Register

Permanent Residence or Adjust Status ("Adjustment-of-Status Application"). Due to the filing of the I-485, INS never adjudicated Faris' request for asylum.

In his Adjustment-of-Status Application, Faris stated that he had last entered the United States from Canada without being inspected by a U.S. immigration officer and that he had never sought to procure entry into the United States or any other immigration benefit by fraud or willful misrepresentation. Faris was granted permanent resident status in March 1996, and became a naturalized citizen in 1999.

### Discussion

The Court generally reviews Rule 12(c) motions under the same standard as Rule 12(b) motions to dismiss. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, where a party seeks "to dispose of the case on the basis of the underlying substantive merits" via Rule 12(c), the appropriate standard "is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chi.,* 994 F.2d 333, 336 (7th Cir. 1993). In those cases, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *P-Americas, LLC v. Cent. States Se. & Sw. Area Pension Fund*, 2014 WL 3858396, at *3 (N.D. Ill. Aug. 5, 2014). A motion will not be granted unless "no genuine issues of material fact remain to be resolved" and the moving party "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

American citizenship is precious, and the government carries a heavy burden of proof when attempting to divest a naturalized citizen of his or her citizenship. *United States v. Firishchak*, 468 F.3d 1015, 1023 (7th Cir. 2006) (citing *Fedorenko v. United States,* 449 U.S. 490, 505 (1981)). The Government must produce evidence justifying revocation that is "clear, unequivocal, and convincing and not leave the issue in doubt." *Fedorenko,* 449 U.S. at 505; *see*

*also Kungys v. United States,* 485 U.S. 759, 776 (1988). A less exacting standard "would be inconsistent with the important right that is at stake in a denaturalization proceeding." *Fedorenko,* 449 U.S. at 505–506.

The Immigration and Nationality Act provides for denaturalization of citizens whose citizenship orders and certificates of naturalization were either (1) "illegally procured" or (2) "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451. "Naturalization is illegally procured if any statutory requirement is not met at the time naturalization is granted." *Fedorenko*, 449 U.S. at 506. One such requirement is that an applicant has been "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a).

In order for an alien to be lawfully admitted for permanent residence, they must be "eligible to receive an immigrant visa and [be] admissible to the United States for permanent residence." 8 U.S.C. § 1255(a). What makes an alien "ineligible to receive visas and ineligible to be admitted to the United States" is articulated in 8 U.S.C. § 1182 (a)(6)(C)(i): "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this statute is inadmissible."

In this case, the Government contends Faris was not lawfully admitted for permanent residence under 8 U.S.C. § 1427(a). Specifically, the Government asserts undisputed facts flowing from its Complaint establish that Faris committed fraud or willfully misrepresented a material fact on three distinct occasions: (1) Faris admits that he entered the United States at New York, New York in March 1994 using a passport and visa belonging to another person whom he had previously met in Bosnia; (2) Faris admits he filed a request for asylum with INS

in July 1994;[1] and (3) Faris admits that he filed an Adjustment-of-Status Application which states that he entered the United States from Canada, and that he never sought to procure entry into the United States by fraud or willful misrepresentation. The Government argues these three "admissions" establish that Faris violated 8 U.S.C. § 1182(a)(6)(C)(i) as a matter of law, and was therefore not lawfully admitted for permanent residency.

Under § 1182(a)(6)(C)(i), the Government must show that Faris misrepresented a "material fact" in order to procure admission to the United States. In *Fedorenko,* the Supreme Court explained that in evaluating a false statement under § 1182, materiality "must be measured in the terms of [the false statement's] effect on the applicant's admissibility into this country." *Fedorenko,* 449 U.S. at 509. The most common formulation of a material concealment or misrepresentation is something that "has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *Kungys,* 485 U.S. at 770. Thus, the test of whether "concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Id.* at 772. It is as to these factors that the Government must produce clear, unequivocal, and convincing evidence. It has failed to do so at the pleading stage.

The Government argues that Faris' admission, that he utilized another person's passport to enter the United States, alone establishes that he was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). However, there is nothing in the record currently before the Court that establishes as a matter of law what effect, if any, Faris' alleged misrepresentations had on the decision to grant him citizenship. Similarly, the Government states in conclusory terms that Faris' alleged misrepresentations on his asylum form "had a natural tendency to influence INS's

---

[1] The Government contends Faris' asylum form indicates that that he arrived in the United States at Buffalo, New York in May 1994 after leaving his home country

decision on his asylum request." But INS never adjudicated Faris' asylum request because of his subsequent Adjustment-of-Status Application.

At this juncture, the record is insufficient to prove the Government's assertion that Faris' misrepresentations were material or had a natural tendency to influence the decisions of INS. For the above reasons, the Government's arguments fall short of meeting its burden of clear, unequivocal, and convincing evidence. Accordingly, the Motion is DENIED.

**IT IS SO ORDERED.**

**DATED: July 11, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**